**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LESLIE S. KLINGER, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CONAN DOYLE ESTATE, LTD, a business entity organized under the laws of the United Kingdom,<br><br>　　　　Defendant. | **Case No.**<br><br>**Judge:**<br>**Magistrate Judge:**<br><br>**JURY DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Leslie S. Klinger, by and through his attorneys, Scott M. Gilbert and Kourtney A. Mulcahy of Hinshaw & Culbertson LLP, in support of his Complaint against Conan Doyle Estate, Ltd, states as follows:

**PARTIES**

1.　Plaintiff Leslie S. Klinger ("Klinger"), a citizen of the United States residing in Malibu, California, is the author and editor of twenty-seven (27) books and dozens of articles on various topics relating to the mystery and thriller genres in literature, including two dozen books and numerous articles on the subject of the so-called Canon of Sherlock Holmes, a phrase that refers to the four (4) novels and fifty-six (56) stories by Sir Arthur Conan Doyle featuring the fictional character of Sherlock Holmes and other related characters and story elements (collectively, "the Canon"). By way of example, Klinger is the author of, among other works, the definitive three-volume annotated collection of canonical Sherlock Holmes books and stories titled *The New*

*Annotated Sherlock Holmes*, which was published by W. W. Norton in 2004 and 2005, and which won the Edgar® Award for Best Critical/Biographical Work. Klinger is widely recognized as one of the world's leading authorities on the Canon and served as the technical adviser for Warner Bros. two recent Sherlock Holmes films and has consulted with many other authors on a number of scripts, books, and comics. Klinger is also an attorney admitted to the practice of law in California and specializes in tax, estate and corporate matters.

2. Klinger is the co-editor, with Laurie R. King ("King"), of a work titled *A Study in Sherlock*, published in 2011 by Random House and Poisoned Pen Press, a collection of new and original short stories by prominent contemporary authors, all of which were inspired by the Canon and feature various characters and other story elements from the Canon.

3. Klinger and King are also the co-editors of a sequel to *A Study in Sherlock*, currently titled *In the Company of Sherlock Holmes*, which is another collection of new and original short stories by contemporary authors, all of which were inspired by the Canon and feature various characters and other story elements from the Canon. *In the Company of Sherlock Holmes* is currently being prepared by Klinger and King for publication by Pegasus Books and distribution by W. W. Norton but has not yet been published.

4. Plaintiff is informed and believes, and upon such information and belief alleges, that defendant Conan Doyle Estate Ltd ("Defendant") is a company registered

2

under the laws of the United Kingdom and owned by members of the Arthur Conan Doyle family, having a primary place of business at 9 London Road, Southampton, United Kingdom.

5. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant is actively engaged in offering to license and licensing its purported rights in the Canon, including purported rights under copyright, to third parties in this District and throughout the United States by and through the Defendant's exclusive authorized licensing agents in the United States, the firm of Hazelbaker & Lellenberg and its principal Jon Lellenberg (collectively, "Defendant's Agent"), whose primary place of business is located at 1501 Hinman Avenue, No. 8B, Evanston, Illinois.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over the subject matter of this lawsuit pursuant to *28 U.S.C. §§ 1331* and *1338* because this case arises under the Copyright Act, *17 U.S.C. §§ 101 et seq.* and the Constitution of the United States. This lawsuit is brought pursuant to the Declaratory Judgment Act, *28 U.S.C. § 2201*.

7. Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant has systematically and continuously availed itself of the privilege of doing business in Illinois to exploit the copyrights currently asserted against Plaintiffs since at least as early as 1997 and continuing to the present, as set out in Paragraphs 17 through 35 of this Complaint, and that Defendant therefore has sufficient contacts with this District, both generally and specifically in connection with the facts alleged in this

3

Complaint, such that Defendant is subject to personal jurisdiction in Illinois.

8. Venue is proper in this District pursuant to *28 U.S.C. § 1391* because Defendant, an alien, is subject to personal jurisdiction in this Court and because a substantial part of the harm threatened to Plaintiffs is occurring in this District by reason of the facts set forth in this Complaint.

## GENERAL ALLEGATIONS

### The Canon and the Sherlock Holmes Story Elements

9. The books and stories by Sir Arthur Conan Doyle ("Conan Doyle") that present the fictional adventures of Sherlock Holmes are not only world famous but long ago achieved the status of iconic artifacts of Western popular culture. Sherlock Holmes uses astute logical reasoning, his ability to adopt almost any disguise, and his skills in forensic science to solve difficult cases as he pursues criminals throughout Victorian and Edwardian London, the south of England, and continental Europe. Sherlock Holmes's constant companion, assistant, and frequent biographer-narrator is a doctor named John H. Watson ("Dr. Watson"). Throughout the four (4) novels and fifty-six (56) stories that comprise the Canon, a number of other fictional characters recur, including the Scotland Yard inspector Lestrade; the group of youthful "street Arabs" known as the Baker Street Irregulars, who are routinely employed by Holmes as informers; his landlady Mrs. Hudson; his even wiser but less ambitious older brother, Mycroft; and, most notably, his formidable opponent, Professor James Moriarty.

10. The fictional characters Sherlock Holmes ("Holmes") and Dr. Watson first

4

appeared in *A Study in Scarlet*, which was first published in the *Beeton's Christmas Annual* in 1887. Sherlock Holmes and Dr. Watson were introduced during Watson's search for lodgings, a scene in which Sherlock Holmes makes a characteristic remark — "You have been to Afghanistan, I perceive" — that suggests the type of inductive reasoning now universally recognized as Sherlock Holmes's stock in trade and principal character trait.

11.     *A Study In Scarlet* thus introduced for the first time in 1887 many of the characters, character traits, dialogue, settings, artifacts, story lines and other story elements that appear throughout the Canon and were later used in countless adaptations, parodies, satires, pastiches, advertisements, commentaries, artwork, books, films and other works of authorship that were inspired by the Canon and that now pervade Western popular culture. Other characters, character traits, dialogue settings, artifacts, story lines and other story elements were introduced for the first time in the additional books and stories by Conan Doyle that were first published in the United States on various dates prior to January 1, 1923.  For the purpose of this Complaint, a description of the characters, character traits, dialogue, settings, artifacts, story lines and other story elements that first appeared in the Canon as it was published in the United States prior to 1923 ("the Sherlock Holmes Story Elements"), and the book and stories in which they first appeared, are set forth in the attached Exhibit "A," which is titled "Sherlock Holmes Story Elements" and which is incorporated by reference in this Complaint. The foregoing list of Sherlock Holmes Story Elements is illustrative and not exhaustive, but Plaintiff

seeks a declaratory judgment in the present action only as to the specific Sherlock Holmes Story Elements set forth in the attached Exhibit "A," as Exhibit "A" may be amended during the pendency of this action with leave of the Court.

12. *A Study in Scarlet* led to a commission to write a second Sherlock Holmes story, *The Sign of Four*, for the American magazine *Lippincott's*. *The Sign of Four* was published in 1890. Conan Doyle wrote and published two other novels, *The Hound of the Baskervilles*, serialized in 1901 and 1902 in *The Strand*, and *The Valley of Fear*, serialized in 1914 and 1915.

13. Conan Doyle also wrote and published fifty-six (56) stories featuring Sherlock Holmes, and the stories were collected and published in five books: (a) *The Adventures of Sherlock Holmes*, published in 1892; (b) *The Memoirs of Sherlock Holmes*, published in 1894; (c) *The Return of Sherlock Holmes*, published in 1905; (d) *His Last Bow*, published in 1917; and (e) *The Case-Book of Sherlock-Holmes,* published in 1927.

14. A list of all books and stories in the Canon that were first published in the United States prior to January 1, 1923, and the date of first publication in the United States for each such book and story, are set forth in the attached Exhibit "B," which Exhibit "B" is titled "Pre-1923 Sherlock Holmes Works," and which Exhibit "B" is incorporated by reference in this Complaint.

15. A list of all books and stories in the Canon that were first published in the United States on or after January 1, 1923, and the date of first publication in the United States for each such book and story, are set forth in the attached Exhibit "C," which is

titled "Post-1923 Sherlock Holmes Works" and which is incorporated by reference in this Complaint.

16. Plaintiffs are informed and believe, and upon such information and belief allege, that the dates of first publication of the books and stories in the Canon in the United States as set forth in the attached Exhibits "B" and "C" are true and correct. Plaintiffs are further informed and believe, and upon such information and belief allege, that even if any of the dates of first publication in the United States as set forth in the attached Exhibits "B" and "C" are not accurate, all of the books and stories set forth in the attached Exhibit "B" were, in fact, first published in the United States prior to January 1, 1923.

### Defendant's Claim of Ownership of the Conan Doyle Rights

17. Although other individuals and entities have asserted conflicting claims of ownership of various of the Conan Doyle Rights, now and at various times in the past, which claims of ownership are not at issue in this Complaint, Defendant holds itself out to the world as the sole and exclusive owner of the Conan Doyle Rights. For the purpose of this Complaint, Plaintiff does not deny that Defendant is the sole owner of the Conan Doyle Rights to the extent that any such rights are valid and existing.

### Copyright Status of the Conan Doyle Rights

18. Pursuant to the copyright law of the United Kingdom and Canada, the Canon in its entirety, and all of the Sherlock Holmes Story Elements, entered the public domain in the United Kingdom and Canada, and in other countries not at issue in this

Complaint, fifty (50) years after the death of Conan Doyle, that is, in 1980.

19. Pursuant to the Copyright Act of 1976 (17 U.S.C. Section § 304), the author of a work that had passed into the public domain in the United States, or his heirs, were entitled to restore the work to copyright in the United States under certain conditions. In 1981, Dame Jean Conan Doyle, the last surviving child of Sir Arthur Conan Doyle, availed herself of the foregoing rights under the Copyright Act of 1976 and applied for registration of the copyright to *The Case-Book of Sherlock Holmes*, a collection of Sherlock Holmes stories, in the United States Copyright Office (*see* Exhibit "C").

20. *The Case-Book of Sherlock Holmes* is comprised of twelve (12) stories that were first published in various periodicals between October 1921 and April 1927, and the collection was first published in book form in the United States in June 1927. However, none of the Sherlock Holmes Story Elements first appeared in *The Case-Book of Sherlock Holmes* or in the stories that comprise the collection, and none of the Sherlock Holmes Story Elements are protected by any copyright that may still apply to *The Case-Book of Sherlock Holmes* or its constituent stories under U.S. law.

21. By reason of the facts stated in Paragraphs 9 through 20 of this Complaint and in the attached Exhibits "B" and "C," all of the books and stories in the Canon as set forth on the attached Exhibit "B," and all of the Sherlock Holmes Story Elements that first appeared in the books and stories as set forth on the attached Exhibit "B," have now passed into the public domain in the United States.

22. Two of the stories published in *The Case-Book of Sherlock Holmes*, "The Adventure of the Mazarin Stone" and "The Problem of Thor Bridge" were first published in the United States prior to 1923 and, accordingly, are now in the public domain. The remaining ten (10) stories in *The Case-Book of Sherlock Holmes* will enter the public domain in various years leading up to 2023. However, none of the Sherlock Holmes Story Elements first appeared in any of the stories that were collected in *The Case-Book of Sherlock Holmes*.

23. For the purpose of this Complaint, Plaintiff is not seeking a declaratory judgment as to the copyright status of any story elements that appeared for the first time in any of the ten stories in *The Case-Book of Sherlock Holmes* that remain under copyright in the United States.

**Defendant's Wrongful Copyright Claims Regarding**
*A Study in Sherlock* **and** *In the Company of Sherlock Holmes*

24. *A Study in Sherlock* is a collection of new and original stories inspired by the Canon and the Sherlock Holmes Story Elements. The authors who contributed stories to *A Study in Sherlock* provide original perspectives on Sherlock Holmes by placing the detective in new situations and by creating new characters who solve Holmesian mysteries. Some of the stories in the collection contemplate Holmes in his later years, while others propose new narratives to fill in the chronological gaps in the Canon. To the extent that the stories in *A Study in Sherlock* make use of Sherlock Holmes story elements, only the Sherlock Holmes Story Elements that have already passed into the

130519468v1 2171

public domain are used.

25.  Klinger and King are currently preparing for publication the sequel to *A Study in Sherlock* under the working title *In the Company of Sherlock Holmes*, which will also consist of new and original stories by prominent contemporary authors who draw selectively on the Sherlock Holmes Story Elements that have already passed into the public domain. Accordingly, no permission or consent of any kind by Defendant was or is required for the use of the Sherlock Holmes Story Elements in both *A Study in Sherlock* and *In the Company of Sherlock Holmes* because all of the Sherlock Holmes Story Elements are now in the public domain in the United States due to the final expiration of the copyrights in and to the Sherlock Holmes Story Elements under U.S. law.

26.  On or about December 7, 2010, Plaintiffs entered into a contract with Random House to publish *A Study in Sherlock.* On or about June 27, 2011, Defendant's Agent contacted Klinger, King and Random House to assert exclusive rights in various unspecified elements of the Sherlock Holmes Story Elements and to demand that Klinger, King and Random House enter into a license agreement with Conan Doyle Estate Ltd. under threat of an infringement action against them if a license were not obtained from Defendant. In response to the foregoing demand, Klinger, King and Random House asserted the position that *A Study in Sherlock* would not be based on any elements of the Canon that remain under copyright in the United States, therefore, Plaintiffs declined to enter into a licensing agreement with Defendant. Thereafter, Random House, without conceding the legal or factual merits of the position asserted by Defendant through

130519468v1 2171

Defendant's Agent, and for avoidance of litigation only, entered into a licensing agreement with Defendant for publication of *A Study in Sherlock* on behalf of Klinger and King on or about August 24, 2011. In or about October 2011, *A Study in Sherlock* was published by Random House and remains in print.

27. Notwithstanding Plaintiff's refusal to comply with Defendant's wrongful demand for licensing of public domain novels and stories as alleged in Paragraph 26 above, Klinger and W. W. Norton, the publisher of *The New Annotated Sherlock Holmes*, voluntarily sought and obtained a license from Defendant for permission to republish the stories in *The Case-Book of Sherlock Holmes* that were still under copyright in the United States in connection with *The New Annotated Sherlock Holmes*. Similarly, Klinger and another one of his publishers, Gasogene Books, also voluntarily sought and obtained a license from Defendant for publication of Klinger's annotated edition of *The Case-Book of Sherlock Holmes* in the Sherlock Holmes Reference Library as published Gasogene Books. However, since *In the Company of Sherlock Holmes* will not use any storylines, dialogue, characters and character traits that were newly introduced in *The Case-Book of Sherlock Holmes*, no license was or is required for *In the Company of Sherlock Holmes.*

28. In or about October 2011, Klinger and King entered into negotiations with Pegasus Books, an independent trade publisher whose books are distributed by W. W. Norton, for publication of *In the Company of Sherlock Holmes*. The negotiations concluded with the offer of a publishing agreement by Pegasus Books to Klinger and King on terms agreeable to all parties.

11

29. On or about November 28, 2012, and prior to the signing of the publishing agreement for *In the Company of Sherlock Holmes*, Defendant's Agent contacted Pegasus and demanded that Plaintiffs and Pegasus enter into a licensing agreement with Defendants on the same terms as the previous agreement with Random House under the implied threat of an infringement action against Pegasus Books, King, Klinger and W. W. Norton if a license were not obtained from Defendant.

30. On or about November 28, 2012, Pegasus Books replied to Defendant's Agent by pointing out that *In the Company of Sherlock Holmes* would include only such characters and other story elements from the Canon that have already passed into the public domain and would not use any characters or other story elements that first appeared in one of the ten (10) stories that remain under copyright in the United States. Pegasus Books also explained that it could not afford the same licensing terms as those offered to Random House in connection with *A Study in Sherlock*.

31. On or about December 11, 2012, Defendant's Agent replied and invited "reasonable counter-proposals." However, despite the knowledge of Defendant and Defendant's Agent that the Sherlock Holmes Story Elements are now in the public domain,[1] and without asserting that any characters or other story elements that remain

---

[1] In June of 2004, the United States District Court for the Southern District of New York held that "at most…only the increments of expression added by" the [Ten] Stories, either to these two characters or any aspect of Sir Doyle's stories that are in the public domain and underlie plaintiff's works, are protected." *Pannonia Farms, Inc. v. USA Cable*, 2004 U.S. Dist. LEXIS 23015, 29-30 (S.D.N.Y. June 7, 2004), *citing Silverman v. CBS Inc.*, 870 F.2d 40, 50 (2d Cir. 1989). The court continued, "Storylines, dialogue, characters and character traits newly introduced by the [Ten] Stories are examples of added contributions susceptible to copyright protection. Plaintiff, however, does not claim infringement of any creative element particular exclusively and originally to the [Ten] Stories. Defendants' Movie therefore is not derived from any material that plaintiff's

12

under copyright would be used, Defendant's Agent threatened to wrongfully interfere with the publication of *In the Company of Sherlock Holmes*, which was then identified by the working title *Study in Sherlock II*, as follows: "If you proceed instead to bring out *Study in Sherlock II* unlicensed, do not expect to see it offered for sale by Amazon, Barnes & Noble, and similar retailers. We work with those company's routinely to weed out unlicensed uses of Sherlock Holmes from their offerings, and will not hesitate to do so with your book as well."

32. On or about December 11, 2012, Pegasus Books informed Defendant's Agent that "[w]e are advised that no license is necessary for the book we are preparing for publication, and we will not be responding to any further communications on this matter." No further communications have been exchanged between Defendant, on one side, and Klinger, King or Pegasus, on the other side, through the date of filing of this Complaint.

33. As a result of the demands and threats of Defendant and Defendant's Agent as alleged above, Plaintiff has a reasonable apprehension that Defendant will file suit against him, his co-editor, and their licensees in the United States if *In the Company of Sherlock Holmes* is published.

34. Pegasus Books, as a direct and proximate result of the threats and demands

---

claimed copyrights could potentially encompass. Lacking an allegation of infringement upon plaintiff's own creative "embellishments and additions" to the Holmes and Watson characters, *Filmvideo Releasing Corp. v. Hastings*, 668 F.2d 91, 92 (2d Cir. 1981), plaintiff could not have reasonably expected success on its copyright claim." The foregoing case was brought by a claimant to the Conan Doyle Rights other than Defendant, but the principles of copyright law are applicable in the present

13

of Defendant, has declined to enter into the publishing agreement for publication of *In the Company of Sherlock Holmes* so long as the threat of a copyright infringement action by Defendant is present and has expressed its willingness to do so only if Plaintiff is successful in adjudicating the public domain status of the Sherlock Holmes Story Elements.

## ALLEGATIONS CONCERNING PERSONAL JURISDICTION

35. Defendant's contacts with Illinois for the purpose of exploiting the copyrights and other rights now asserted against Plaintiff have been systematic and continuous since 1981 and continuing until the present.

36. Plaintiff is informed and believes, and upon such information and belief alleges, that a major source of Defendant's revenues are derived from the licensing of rights of the Conan Doyle Rights in the United States, always under the stated or implied threat that unlicensed use of the Sherlock Holmes Story Elements will be the subject of interference with distributors and resellers and/or the filing of an infringement action.

37. Defendant's business activities, including the licensing of rights to persons and entities in the United States, are conducted on its behalf by Defendant's Agent from his office located at 1501 Hinman Avenue, Suite 8B, Evanston, Illinois 60201.

---

dispute between Plaintiff and Defendant.

## COUNT I

## DECLARATORY JUDGMENT - COPYRIGHT ACT [17 U.S.C. §§ 101, ET SEQ.]

38.  Plaintiff incorporates by reference the allegations in each of the preceding Paragraphs as if fully set forth in this Paragraph.

39.  An actual controversy exists between Plaintiff and Defendant as to whether the publication of *In the Company of Sherlock* by Plaintiff, his co-editor and their licensees infringes any copyright of Defendant.

40.  Plaintiff alleges, and Defendant denies, that, as a matter of law, the works of authorship set forth in the attached Exhibit "B" are now in the public domain in the United States, and, accordingly, any member of the public, including Plaintiff, has the right in the United States to copy the expression embodied in these public domain works, and to create and exploit derivative works based on these public domain works, without infringing any right of Defendant under copyright.

41.  Plaintiff alleges, and Defendant denies, that, as a matter of law, the characters of Sherlock Holmes and Dr. Watson, and the other characters, character traits, dialogue, settings, artifacts, story lines and other story elements that first appeared in the works of authorship set forth in the attached Exhibit "B," including but not limited to the Sherlock Holmes Story Elements as set forth on the attached Exhibit "A," are now in the public domain in the United States, and, accordingly, any member of the public, including Plaintiff, has the right in the United States to copy the expression embodied in these public domain works, and to create and exploit derivative works incorporating any

and all of the Sherlock Holmes Story Elements, without infringing any right of Defendant under copyright.

42. Plaintiffs are entitled to a declaratory judgment against Defendant as set forth in Paragraph 40 and Paragraph 41 above pursuant to the Copyright Law of the United States and the First Amendment to the Constitution of the United States.

WHEREFORE, Plaintiff prays for relief as follows:

1. For a judicial determination and order declaring that, copyright having expired in the United States as to the works of authorship set forth in the attached Exhibit "B," and as to the Sherlock Holmes Story Elements as set forth in the attached Exhibit "A," any member of the public, including Plaintiff, has the right in the United States to copy the expression embodied in these public domain works, and to create and exploit derivative works incorporating any and all of the Sherlock Holmes Story Elements, without infringing any right of Defendant under copyright.

2. For an Order enjoining Defendant and its agents and attorneys from further asserting rights under copyright in and to the works of authorship set forth in the attached Exhibit "B" and/or the Sherlock Holmes Story Elements as set forth in the attached Exhibit "A," and from interfering with the exploitation of the Sherlock Holmes Story Elements by Plaintiff.

3. For the recovery of Plaintiff's full costs and reasonable attorneys' fees as provided in 17 U.S.C. Section 505; and

4. For such additional and further relief, in law and equity, as the Court may

deem just and proper.

Dated: February 14, 2013

130519468v1 2171

                                                                  Respectfully submitted,

                                                            By:    s/Scott M. Gilbert_____

                                                                     Attorney for Plaintiff

Scott M. Gilbert (#06282951)
Kourtney A. Mulcahy (#6276695)
Hinshaw & Culbertson LLP
222 N. LaSalle Street
Suite 300
Chicago, IL 60601
312-704-3000
312-704-3001 (fax)

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues triable to a jury.

Dated: February 14, 2013

Scott M. Gilbert (#06282951)
Kourtney A. Mulcahy (#6276695)
Hinshaw & Culbertson LLP
222 N. LaSalle Street
Suite 300
Chicago, IL 60601
312-704-3000
312-704-3001 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2013, I electronically filed **Plaintiff's Complaint for Declaratory Judgment,** with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

          By: /s/ Scott M. Gilbert
          One of the Attorneys for Plaintiff
          Scott M. Gilbert (# 06282951)
          Kourtney A. Mulcahy (#6276695)
          HINSHAW & CULBERTSON LLP
          222 North LaSalle Street, Suite 300
          Chicago, Illinois 60601-1081
          (312) 704-3000