IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESLIE S. KLINGER, an individual,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CONAN DOYLE ESTATE, LTD, a business entity organized under the laws of the United Kingdom,<br><br>　　　　Defendant. | Case No.: 1:13-cv-01226<br><br>Judge: The Hon. Ruben Castillo<br><br>Magistrate Judge: The Hon. Sheila Finnegan |

**PLAINTIFF'S LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Plaintiff LESLIE S. KLINGER ("Plaintiff"), by and through its attorneys, Scott M. Gilbert and Kourtney A. Mulcahy of Hinshaw & Culbertson LLP, states the following as its statement of material facts as to which there is no genuine issue, made pursuant to Local Rule 56.1(a)(3).

## I. PARTIES

1. Plaintiff Leslie S. Klinger ("Klinger"), a citizen of the United States residing in Malibu, California, is the author and editor of twenty-seven (27) books and dozens of articles on various topics relating to the mystery and thriller genre in literature, including two dozen books and numerous articles on the subject of the so-called Canon of Sherlock Holmes, a phrase that refers to the four (4) novels and fifty-six (56) stories by Sir Arthur Conan Doyle featuring the fictional character of Sherlock Holmes and other related characters and story elements (collectively, "the Canon"). By way of example, Klinger is the author of, among other works, the definitive three-volume collection of canonical Sherlock Holmes books and stores titled *The New Annotated Sherlock Holmes*, which was published by W. W. Norton in 2004 and 2005 and which won the Edgar® Award for Best Critical/Biographical Work.  Klinger is widely recognized as one of the world's leading authorities on the Canon and served as the technical advisor for Warner Bros.' two recent Sherlock Holmes films and has consulted with many other authors on a number of scripts, books and comics. Klinger is also an attorney admitted to the practice of law in California and specializes in tax, estate and corporate matters. (Declaration of Leslie S.

Klinger ("Klinger Decl."), ¶3, Exhibit D; Complaint in U.S.D.C. Case No. 1:13-cv-01226 ("Compl."), Dkt. 1, ¶1.)

2. Klinger is the co-editor, with Laurie R. King ("King"), of a work titled *A Study in Sherlock*, published in 2011 by Random House and Poisoned Pen Press, which consists of a collection of new and original short stories by prominent contemporary authors, all of which were inspired by the Canon and feature various characters and other story elements from the Canon. (Klinger Decl., ¶3; Compl., ¶2.)

3. Klinger and King are also the co-editors of a sequel to *A Study in Sherlock*, currently titled *In the Company of Sherlock Holmes*, which is another collection of new and original short stories by contemporary authors, all of which were inspired by the Canon and feature various characters and story elements from the Canon. *In the Company of Sherlock Holmes* is currently being prepared by Klinger and King for publication by Pegasus Books and distribution by W. W. Norton but has not yet been published. (Klinger Decl., ¶3; Compl., ¶3.)

4. Defendant Conan Doyle Estate Ltd. ("Defendant") is a company registered under the laws of the United Kingdom and owned by members of the Arthur Conan Doyle family, having a primary place of business at 9 London Road, Southampton, United Kingdom. (Klinger Decl., ¶5; Compl., ¶4.)

5. Defendant is actively engaged in offering to license, and licensing its purported rights in the Canon, including purported rights under copyright, to third parties in this District and throughout the United States by and through the Defendant's exclusive authorized licensing agents in the Untied States, the firm of Hazelbaker & Lellenberg, and its principal, Jon Lellenberg (collectively, "Defendant's Agent"), whose primary place of business is located at 1501 Hinman Avenue, No. 8B, Evanston, Illinois. (Klinger Decl., ¶6; Compl., ¶5.)

## II. JURISDICTION AND VENUE

6. Plaintiff has raised claims arising under the Copyright Act, *17 U.S.C. §§ 101 et seq.* and the Constitution of the United States. This Court has jurisdiction over such claims pursuant to *28 U.S.C. §1331 and 1338*. (Compl., ¶3.)

7. Venue is proper in this District pursuant to *28 U.S.C. § 1391* because the principal place of business for the licensing agent who represents Defendant Conan Doyle Estate, Ltd. ("Defendant") in the United States and several of the material alleged events giving rise to the Plaintiff's complaint occurred within this judicial district, and because a substantial part of the harm threatened to Plaintiff is occurring in this District. (Klinger Decl., ¶5; Compl., ¶7, ¶8 and ; Compl., ¶35-¶37.)

### III. STATEMENT OF FACTS

    A.    <u>The Sherlock Holmes Canon</u>.

8. The fictional characters of the detective Sherlock Holmes, his friend and colleague John H. Watson ("Dr. Watson"), and other characters and story elements relating to Sherlock Holmes first appeared in a story titled *A Study in Scarlet* by Sir Arthur Conan Doyle ("Conan Doyle"), which was first published in the *Beeton's Christmas Annual* in 1887 and first published in the United States in 1890. (<u>Declaration of Peter Blau</u> ("Blau Decl."), ¶6, Exhibit E; <u>Declaration of Steven Rothman</u> ("Rothman Decl."), ¶6, Exhibit F; Klinger Decl., ¶4; Compl., ¶9-¶12.)

9. Conan Doyle continued to write and publish a total of four (4) novels and fifty-six (56) stories featuring Sherlock Holmes, Dr. Watson and other story elements relating to Sherlock Holmes between 1887 and 1927. (Blau Decl., ¶6; Rothman Decl., ¶6; Klinger Decl., ¶4; Compl., ¶15-¶16.).

    B.    <u>The Sherlock Holmes Story Elements</u>.

10. The various specific characters, character traits, dialogue, settings, artifacts, story lines and other story elements set forth in the attached Exhibit "A" (collectively "the Sherlock Holmes Story Elements"), which Exhibit "A" is incorporated by reference herein, were first introduced by Conan Doyle in the various specific novels and stories set forth in Exhibit "A." (Blau Decl., ¶6; Rothman Decl., ¶6; Klinger Decl., ¶4; Compl., ¶11.)

    C.    <u>Copyright Status of the Canon</u>.

11. Of the various novels and stories that constitute the Canon, all of the novels and all but ten (10) of the stories were first published in the United States on various dates prior to January 1, 1923. (Blau Decl., ¶6; Rothman Decl., ¶6; Klinger Decl., ¶4; Compl., ¶18-¶21.)

12. The ten (10) stories that were first published in the United States after January 1, 1923, and their respective dates of first publication in the United States, are set forth in the attached Exhibit "B," which is incorporated by reference herein (collectively "the Ten Stories"). (Blau Decl., ¶6; Rothman Decl., ¶6; Klinger Decl., ¶4; Compl., ¶21.)

13. The forty-six (46) stories and four (4) novels that were first published in the United States prior to January 1, 1923 are set forth in the attached Exhibit C, which is incorporated by reference herein. (Blau Decl., ¶6; Rothman Decl., ¶6; Klinger Decl., ¶4; Compl., ¶14-¶16.)

14. The forty-six (46) stories and four (4) novels set forth in the attached Exhibit C, and the contents thereof in their entirety, are now in the public domain in the United States by reason of the fact that each of them was first published in the United States prior to January 1, 1923. (Blau Decl., ¶6; Rothman Decl., ¶6; Klinger Decl., ¶4; Compl., ¶21.)

130621603v1 0943356

15. Only the Ten Stories remain under copyright in the United States as of the date of this Rule 56.1(a)(3) Statement. (Blau Decl., ¶6; Rothman Decl., ¶6; Klinger Decl., ¶4; Compl., ¶22-¶23.)

      D.     Copyright Status of the Sherlock Holmes Story Elements.

16. All of the Sherlock Holmes Story Elements first appeared in novels and stories that were first published in the United States prior to January 1, 1923, and for that reason, all of the Sherlock Holmes Story Elements are now in the public domain in the United States. (Blau Decl., ¶7; Rothman Decl., ¶7; Klinger Decl., ¶4; Compl., ¶11-¶18.)

17. None of the Sherlock Holmes Story Elements first appeared in any of the Ten Stories and, for that reason, none of the Sherlock Holmes Story Elements are subject to copyright protection by reason of the copyright status of the Ten Stories in the United States. (Blau Decl., ¶8; Rothman Decl., ¶8; Klinger Decl., ¶4; Compl., ¶20-¶23.)

      A.     Conan Doyle Estate, Ltd. and the Sherlock Holmes Canon.

18. Defendant holds itself out as the exclusive owner of all rights under copyright in the United States in and to the Canon. Specifically, Defendant takes the position that its permission is required to create and exploit any and all derivative works based on any element of the Canon, including not only the Ten Stories but also any of the Sherlock Holmes Story Elements, all of which first appeared in stories and novels that are now in the public domain. (Klinger Decl., ¶3; ; Compl., ¶5 and ¶17.)

19. Defendant is actively engaged in offering and granting licenses of its purported rights in the Canon and the Sherlock Holmes Story Elements to third parties through Defendant's Agent. (Klinger Decl., ¶3; Compl., ¶17.)

20. Defendant, by and through Defendant's Agent, threatens to interfere with the creation and/or exploitation of derivative works embodying any of the Sherlock Holmes Story Elements, including but not limited to derivative works in the nature of books and stories, unless the authors and/or publishers of such books and stories first obtain and pay for a license from Defendant. (Klinger Decl., ¶3 and Comp., ¶31.)

21. Defendant has expressly threatened to interfere with the publication of new and original stories in an anthology compiled and edited by Plaintiff and Plaintiff's co-editor, Laurie R. King, unless Plaintiff or his publisher first obtains and pays for a license from Defendant. (Klinger Decl., ¶3; Compl., ¶24-34.)

22. Contrary to its assertions, Defendant enjoys no right to control how the Sherlock Holmes Story Elements are used by Plaintiff or any other person in the United States by reason of the following facts:

     (a)     All of the novels and stories comprising the Canon, with the sole exception of the Ten Stories, are now in the public domain under copyright law in the United States. (Blau Decl., ¶6; Rothman Decl., ¶6; Klinger Decl., ¶4; Compl., ¶21 and ¶23.)

4

  (b) Each and every one of the Sherlock Holmes Story Elements appeared for the first time in novels and stories that were published prior to January 1, 1923, and thus the Sherlock Holmes Story Elements, as well as the novels and stories in which they first appeared, are now in the public domain under copyright law in the United States. (Klinger Decl., ¶4; Compl., ¶21 - ¶23.)

  (c) None of the Sherlock Holmes Story Elements appeared for the first time in the Ten Stories, and thus the copyright status of the Ten Stories does not extend copyright protection in the United States to any of the Sherlock Holmes Story Elements. (Klinger Decl., ¶4; Compl., ¶21-¶23.)

  (d) For the reasons stated above, no license or other consent or permission of any kind whatsoever is required under U.S. copyright law for Plaintiff or any other person whatsoever to create and exploit derivative works, including but not limited to novels and stories, based on the Sherlock Holmes Story Elements and/or any other contents of the novels and stories set forth in the attached Exhibit C. (Klinger Decl., ¶4; Compl., ¶21-¶23.)

  E. <u>Actual Case and Controversy.</u>

23. An actual case and controversy exists as between Plaintiff and Defendant in that Plaintiff asserts, and Defendant denies, the right of Plaintiff and any other person to create and exploit new derivative works based on the Sherlock Holmes Story Elements as embodied in the novels and stories in the Canon that are now in the public domain, and Defendant has actively attempted to prevent Plaintiff from doing so by interfering with its efforts to publish such new derivative works. (Klinger Decl., ¶3; Compl., ¶39-¶41.)

  F. <u>Plaintiff's Legal Fees and Costs</u>.

24. Plaintiff has incurred actual legal fees and expenses in the total amount of $17,272.25 through the date of signing of this Rule 56.1(a)(3) Statement and will incur additional expenses through the date of entry of final judgment on the merits, which Plaintiff will report to the Court. (Klinger Decl., ¶3.)

Scott M. Gilbert, ARDC No. 6282951
Kourtney A. Mulcahy, ARDC No. 6276695
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street
Chicago, IL 60601
Phone No.: 312-704-3000
Fax No.: 312-704-3001

Respectfully Submitted,
LESLIE S. KLINGER, Plaintiff

By: /s/Scott M. Gilbert_____
  One of Plaintiff's Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2013, I electronically filed the attached **PLAINTIFF'S LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, and sent by U.S. Mail such filing(s) to the following:

Benjamin Allison
317 Paseo de Peralta
Santa Fe, NM 87501

Jon Lellenberg
Hazelbaker & Lellenberg
1501 Hinman Avenue #8B
Evanston, IL 60201

Conan Doyle Estate, Ltd.
9 London Road, Southhampton, SO15
2AE United Kingdon

                                                       /s/Scott M. Gilbert
                                                       Scott M. Gilbert

130621603v1 0943356