IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESLE S. KLINGER, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>CONAND DOYLE ESTATE, LTD., a business entity organized under the laws of the United Kingdom,<br><br>    Defendant. | Case No.: 1:13-cv-01226<br><br>Judge: Ruben Castillo<br><br>Magistrate Judge: Sheila Finnegan |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56**

Plaintiff LESLIE S. KLINGER ("Plaintiff"), by and through his attorneys, Scott M. Gilbert and Kourtney A. Mulcahy of Hinshaw & Culbertson LLP, submits this Memorandum of Law In Support of Plaintiff's Motion for Summary Judgment, pursuant to FRCP 56:

### I.    STATEMENT OF FACTS

1.    <u>The Sherlock Holmes Canon.</u>

Sherlock Holmes, one of the iconic artifacts of Western popular culture, is a fictional character who was first introduced to the world by Sir Arthur Conan Doyle in 1887 in a story titled *A Study in Scarlet*. Conan Doyle went on to write and publish a total of four (4) novels and fifty-six (56) stories in which Sherlock Holmes appears, a body of work that comprise the so-called Canon of Sherlock Holmes ("the Canon"). (Plaintiff's Local Rule 56.1(a)(3) Statement of Material Facts in Support of His Motion for Summary Judgment ("R. 56"), ¶8-¶ 10.)

The Canon features other immortal characters, including Sherlock Holmes' companion, assistant and biographer-narrator, Dr. John H. Watson, the Scotland Yard inspector named Lestrade, and a formidable opponent, Professor James Moriarty. All of these characters and all of

the instantly recognizable elements of the Sherlock Holmes character — his family background, his physical appearance, his lodgings on Baker Street, his Bohemian nature, his use of cocaine, his aptitude for disguise, and his method of reasoning — were established in the very first stories and novels to be published. (R. 56, ¶8.)

For purposes of the present litigation, Plaintiff has specified various characters, character traits, dialogue, settings, artifacts, story lines and other story elements that first appeared in novels and stories that were published in the United States at various times prior to January 1, 1923 (collectively, "the Sherlock Holmes Story Elements"), all of which are set forth in Exhibit "A" to R. 56; see also Exhibit "C" to R. 56, which sets forth the date of first U.S. publication for all pre-1923 novels and stories in the Canon.

    2.    <u>Copyright Status of the Canon and the Sherlock Holmes Story Elements</u>.

The date of first publication is decisive in the present case for the simple fact that, under U.S. copyright law, any work of authorship first published in the United States prior to January 1, 1923, is now in the public domain. For that reason, if any of the Sherlock Holmes Story Elements were entitled to protection under copyright, the term of copyright protection for the novels and stories in which they first appeared has now expired in the United States (and elsewhere throughout the world). Accordingly, Plaintiff (and anyone else) is free to create and publish derivative works based on these public domain works, including the story elements contained in these works. (R. 56, ¶11-¶177 and ¶22(a)-(d).)

    3.    <u>Wrongful Conduct of Defendant.</u>

Defendant Conan Doyle Estate, Ltd. is a U. K. company that purports to own and control rights under copyright in the Canon. Its authorized agent in the United States, Jon Lellenberg and the firm of Hazelbaker & Lellenberg (collectively, "Defendant's Agent"), routinely offers to

130621599v1 0943356

license Defendant's purported rights in the Canon to authors, publishers, motion picture and television production companies, etc., under the stated or implied threat of interfering with any publication or production based on the Canon that is developed without a paid license. (R. 56, ¶5 and ¶18-21.)

Until now, authors, publishers and producers have elected to yield to these demands rather than to take on the burden of litigating the public-domain status of the Canon. Indeed, Random House, the publisher of a 2011 book edited by Plaintiff and Laurie R. King, entitled *A Study in Sherlock*, a collection of new and original Sherlock Holmes stories by contemporary authors, paid a license fee to the Defendant for that book. (R. 56, ¶18-¶21.)

When Plaintiff and his co-editor, Laurie R. King, undertook the publication of a second similar collection of new tales, which was tentatively titled *In the Company of Sherlock Holmes*, Defendant demanded that they obtain a paid license from Defendant. Plaintiff's publisher declined to pay for the license, and Plaintiff decided to take on the burden of litigating the copyright status of the Canon rather than yielding to the inflated and insupportable claims of Defendant. (R. 56, ¶21.)

When the publisher pointed out to Defendant's Agent that no license was necessary for *In the Company of Sherlock Holmes* because of the public-domain status of all but a few of the novels and stories that comprise the Canon, Defendant's Agent expressly threatened Plaintiff as follows: "If you proceed instead to bring out *Study in Scarlett II* unlicensed, do not expect to see it offered for sale by Amazon, Barnes & Noble, and similar retailers. We work with those companies routinely to weed out unlicensed uses of Sherlock Holmes form their offerings, and will not hesitate to do so with your book as well." (R. 56, ¶21.)

3

4. Relief Sought in the Present Action.

The present lawsuit is based on the simple and irrefutable fact that all of the novels and all but ten of the stories in the Canon — and *all* of the novels and stories in which the Sherlock Holmes Story Elements were first introduced to the world — are now in the public domain in the United States by reason of the fact that they were first published in the U.S. prior to January 1, 1923. Since the works in their entirety are now in the public domain, so are the Sherlock Holmes Story Elements that first appeared in them. For that reason, Defendant has no right under U. S. copyright law to require a license for the creation or exploitation of derivative works based on the Sherlock Holmes Story Elements, and anyone (including but not limited to Plaintiff) is free to do so without infringing any rights under copyright that may be owned by Defendant. (R. 56, ¶16-¶17 and ¶22(a)-(d).)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There can be no genuine issue of material fact where there is a complete failure of proof by the non-moving party. Celotex Corp. v. Catrett, 477, U.S. 317, 323 (1986). If a defendant fails to answer a complaint and a default is entered, "the well-pled allegations of the complaint relating to liability are taken as true." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). See also, *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990). ("In the case of a default, this circuit [7th Cir.] follows the rule that the well-pleaded allegations of the complaint relating to liability are taken as true. . .").

4

Because the Defendant failed to file any responsive pleading in this matter, Plaintiff is entitled to rely on the foregoing presumption as to each allegation in the Complaint. However, Plaintiff has elected to submit additional probative evidence in support of all allegations of the Complaint, including his own declaration as an internally recognized expert on Sherlock Holmes and the declarations of Peter Blau and Steven Rothman, both of whom are also world-renowned experts on the same subject.

### III. ARGUMENT

1. <u>All Works In the Canon of Sherlock Holmes Published Prior to 1923 Are In the Public Domain in the United States</u>.

Determining the duration of copyright protection in the United States can be a complicated issue, but not in the present case. Indeed, the fact that all of the works at issue were first published in the United States prior to January 1, 1923, means that all of the works are in the public domain: <u>"[W]orks first published through the end of 1922 remain unprotected today."</u> *1 Nimmer on Copyright*, §9.11[B][1], p. 9-153 (hereinafter "Nimmer") (emphasis added).[1] This case concerns only the original four Sherlock Holmes novels, and 46 out of the 56 original Sherlock Holmes stories (collectively, the "Pre-1923 Works"), all of which are indisputably in the copyright public domain in the United States.

---

[1] Nimmer goes on to state: "That conclusion follows whether the subject publication took place in the United States or abroad — except under the variant view adopted by the Ninth Circuit as to foreign publications." *1 Nimmer*, §9.11[B][1], p. 9-153. However, the "variant view" of the 9th Circuit focused on the issue of whether publication of a work outside the United States without the notice required under U.S. law "start[ed] the U.S. term running." *Id*. The issue need not be considered here because all of the pre-1923 works in the Canon were, in fact, published in the United States, and it is the date of first U.S. publication that from which the term of copyright protection must be calculated.

5

    2.    <u>The Sherlock Holmes Story Elements At Issue In the Present Action First Appeared in the Pre-1923 Works That Are Now in the Public Domain.</u>

Plaintiff does not dispute that the Sherlock Holmes Story Elements were once entitled to protection under copyright. "Although there has been some conflict in the cases, it is clearly the prevailing view that characters per se are entitled to copyright protection." *1 Nimmer*, §2.12, p 2-178.25, citing, *inter alia*, *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607 (2d Cir1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed. 2d 145 (1982).

Nor does Plaintiff dispute in the present action that the Ten Stories — that is, the Sherlock Holmes stories that were first published in or after 1923 — are still protected under U.S. copyright at the present time. However, the existing copyrights in the Ten Stories protect only the character and story elements that were first introduced in those stories, and <u>not</u> the Sherlock Holmes Story Elements that were first introduced in pre-1923 novels and stories. This is true regardless of whether the Sherlock Holmes Story Elements were re-used later in the Ten Stories. Once a character or other story element is first used in a work of authorship, the copyright clock starts ticking; re-use of a particular character or other story element does not extend the copyright protection for that character or element. The question of copyright expiration for a continuing story element (such as a character) used by the author in a series of works has been asked and answered definitively by the leading copyright treatise.

"What of the situation where an author has used the same character in a series of works, some of which works subsequently enter the public domain, while others remain protected by copyright? <u>Clearly anyone may copy such elements as have entered the public domain, and no one may copy such elements as remain protected by copyright</u>." *1 Nimmer*, *supra*, §2.12, p. 2-178.30, 2-178.30(1), 2-178-31 (Emphasis added), citing, *inter alia*, *National Comics Publications, Inc. v. Fawcett Publications*, 191 F.2d 594 (2d Cir. 1951).

6

The rule applies even if, as in the present case, the same characters appear in both the works that have passed into the public domain and the works that remain under copyright:

> The more difficult question is this: may the character depicted in all of the works be appropriated for use in a new story created by the copier? Assuming the character to be sufficiently developed as to be protectable, arguably such conduct would constitute an infringement of those works that remain in copyright. The better view, however, would appear to be that <u>once the copyright in the first work that contained the character enters the public domain, then it is not copyright infringement for others to copy the character in works that are otherwise original with the copier, even though later works in the original series remain protected by copyright</u>.

1 *Nimmer*, *supra*, §2.12, p. 2-178.31 (Emphasis added), citing, *inter alia*, *Columbia Broadcasting Sys., Inc. v. DeCosta*, 377 F.2d 315 (1st Cir.), *cert. denied*, 389 U.S. 1007, 88 S. Ct. 565, 19 L. Ed. 2d 603 (1967).

\* \* \*

> Just as the copyright in a derivative work will not protect public domain portions of an underlying work as incorporated in the derivative work, <u>so copyright in a particular work in a series will not protect the character as contained in such series if the work in the series in which the character first appeared has entered the public domain</u>.

1 *Nimmer*, *supra*, §2.12, p. 2-178.31 (Emphasis added), citing, *inter alia*, *Siegel v. Warner Bros. Entm't Inc.*, 690 F. Supp. 2d 1048, 1059 (C.D. Cal 2009).

Courts widely share Nimmer's view that copyright protection expires for characters and story elements regardless of whether those elements are re-incorporated into later works of a a continuing series. *See, e.g.*, *Silverman v. CBS*, 870 F.2d 40, 49-50 (2d Cir. 1989) ("whatever rights [CBS] may have in the [later] programs . . . provide protection only for the increments of expression beyond what is contained in the pre-1948 radio scripts. This principle is fully applicable to works that provide further delineation of characters already sufficiently delineated to warrant copyright protection."); *Filmvideo Releasing Corp. v. Hastings*, 668 F.2d 91, 92 (2d Cir., 1981) ("Since 1909, the courts of this Circuit have held almost without exception that a

7

derivative copyright is a good copyright only with regard to the original embellishments and additions it has made in the underlying work . . . section 7 limits the copyright protection of the derivative work . . . to the novel additions made to the underlying work, and the derivative work does not affect the 'force or validity' of the copyright in the matter from which it is derived.") (internal citations omitted); and *Siegel v. Warner Bros. Entm't Inc.*, 690 F.Supp.2d 1048, 1058-59 (C.D.Cal. 2009) ("the copyrightable aspects of a character—the thing for which a notice is designed to declare its intent to recapture—are protected only to the extent the work in which that particular aspect of the character was first delineated remains protected, but not in the subsequent sequels in which that attribute is later repeated or used.").

Since Plaintiff is seeking to use <u>only</u> the Sherlock Holmes Story Elements that first appeared in works now in the copyright public domain — and since Plaintiff is <u>not</u> seeking to use any copyright-protected elements that may have appeared for the first time in the Ten Stories — no license from Defendant is required for use of such public-domain characters and other story elements.

    3.    <u>Plaintiff Is Free to Create and Exploit New Derivative Works Based on Characters and Other Story Elements Appearing in Works in the Public Domain</u>

Precisely because the Sherlock Holmes Story Elements and the works in which they first appeared are now in the public domain, Plaintiff (and everyone else) is free to create and exploit new derivative works based on the public-domain elements of the original novels and stories in the Canon.

The issue was considered and decided in the leading case of *Silverman v. CBS, Inc.*, 870 F. 20 40, 49-50 (2d Cir. 1989), a declaratory relief action in which the plaintiff sought a ruling that episodes of the *Amos 'n Andy* radio show first broadcast prior to 1948 had passed into the public domain and were available for use in derivative works without the consent of the

8

copyright owner even though some later episodes of the same show remained under copyright. The court ruled that copyright in the later episodes "provide[d] protection only for the increments of expression beyond what is contained in the pre-1948 radio scripts, which are in the public domain. This principle is fully applicable to works that provided further delineation of characters already sufficiently delineated to warrant copyright protection." *See Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 683 F.2d 610, 631 (2d Cir. 1982)." *Silverman v. CBS, Inc*., 870 F. 2d 40, 50 (2d Cir. 1989) (emphasis added).

Significantly, the ruling in *Silverman v. CBS* was applied specifically to the Canon of Sherlock Holmes by a U.S. District Court in *Pannonia Farms, Inc. v. USA Cable*, 72 U.S.P.Q. 1090. (SDNY 2004), a case in which the purported owner of the Sherlock Holmes copyrights sued the producer of an unauthorized Sherlock Holmes motion picture for copyright infringement. The Court in *Pannonia Farms* held: "Like the Amos 'n Andy characters, the Holmes and Watson characters have been delineated in over fifty stories that no longer possess copyright protection. Again, like Silverman, just as these many stories have passed into the public domain, so too have their delineated constituent elements, such as the Holmes and Watson characters that are the subject of this suit. …Thus, at most, '[o]nly increments of expression added by' the Nine Stories, either to these two characters or any aspect of Sir Doyle's stories that are in the public domain and underlie plaintiff's works, are protected. [Internal citations omitted.] Storylines, dialogue, characters and character traits newly introduced by the Nine Stories are examples of added contributions susceptible to copyright protection." *Pannonia Farms, Inc. v.*

*USA Cable*, 72 U.S.P.Q. 1090. (SDNY 2004), citing, *inter alia*, *Silverman*, *supra* , and *Filmvideo Releasing Corp. v. Hastings*, 668 F.2d 91, 92 (2d Cir. 1981).[2]

The ruling in *Pannonia Farms* applies squarely to the present dispute. No copyright protection under U.S. law applies to any of the Sherlock Holmes Story Elements, all of which first appeared in works that have long ago passed into the public domain in the United States.

Defendant in the present action has long asserted that a license is required to create derivative works based on the Sherlock Holmes Story Elements even though, as set forth above, all such story elements first appeared in novels and stories that are now in the public domain. Until Plaintiff elected to file the present action, no one has put Defendant to its proof. Tellingly, Defendant has declined to litigate the issue by filing any responsive pleading in the present action, which strongly suggests that there is no legal or factual basis for denying Plaintiff's allegations. Indeed, Defendant's failure to appear and plead raises a presumption that all of the allegations in the Complaint in the present action are true. Nevertheless, Plaintiff has not relied solely on the presumption and has presented substantial evidence in support of its allegations. Consequently, the sound evidence adduced by Plaintiff in support of his present Motion for Summary Judgment fully justifies the entry of a judgment on the merits in favor of Plaintiff as prayed for in the Complaint.

Plaintiff respectfully asserts that he is entitled to a judgment on the merits on the allegations of his Complaint and on his prayer for relief. It is vitally important that a judgment on the merits be rendered rather than merely a default judgment. Unless a judgment on the merits is

---

[2] Neither of the parties in the present case were parties in *Pannonia Farms, Inc. v. USA Cable*, *supra*. The *Pannonia Farms* court assumed that only nine of the Sherlock Holmes stories remained under copyright, but Plaintiff concedes for the purpose of the present case that ten stories in the Canon appear to remain under copyright in the U.S., although none of the Sherlock Holmes Story Elements at issue here first appeared in these ten stories.

rendered, not only is Plaintiff likely to face an identical threat from Defendant on any succeeding books he may publish using the Sherlock Holmes Story Elements, other creators will face the same "bullying" and abuse of the copyright laws by Defendant. Indeed, Plaintiff is well aware that Defendant has continued to assert its rights with other creators during the pendency of this case and has extracted license fees from creators unwilling to wait for the outcome of this case. Only a judgment on the merits in favor of Plaintiff will end this reprehensible conduct.

## **CONCLUSION**

WHEREFORE, Plaintiff Leslie S. Klinger respectfully requests that this Honorable Court enter an order granting its Motion for Summary Judgment and entering judgment as prayed for in the Complaint in the present action. Plaintiff further requests that it be awarded his costs, including attorney and expert witness fees, pursuant to 17 U.S.C. §505.

| | |
|---|---|
| Scott M. Gilbert, ARDC No. 6282951<br>Kourtney A. Mulcahy, ARDC No. 6276695<br>HINSHAW & CULBERTSON LLP<br>222 N. LaSalle Street<br>Chicago, IL 60601<br>Phone No.: 312-704-3000<br>Fax No.: 312-704-3001 | Respectfully Submitted,<br>LESLIE S. KLINGER, Plaintiff<br><br>By: /s/Scott M. Gilbert<br>One of Plaintiff's Attorneys |

130621599v1 0943356

**CERTIFICATE OF SERVICE**

       I hereby certify that on July 29, 2013, I electronically filed the attached **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, and sent by U.S. Mail such filing(s) to the following:

Benjamin Allison
317 Paseo de Peralta
Santa Fe, NM 87501

Jon Lellenberg
Hazelbaker & Lellenberg
1501 Hinman Avenue #8B
Evanston, IL 60201

Conan Doyle Estate, Ltd.
9 London Road, Southhampton, SO15
2AE United Kingdon

                                                                /s/Scott M. Gilbert
                                                                Scott M. Gilbert

130621599v1 0943356